RAMAGE v. RAMAGE.

Where one person pays the purchase money and another procures the deed to be made to him, if the insertion of his name was fraudulently procured, no title or interest vests in him, and if done by permission of the purchaser, a trust results for him who paid the purchase money.

Before FRASER, J., Edgefield, March, 1886.

The opinion states the case.

*Messrs. Norris & Folk*, for appellant.

*Messrs. Gary & Evans*, contra.

June 26, 1887.   The opinion of the court was delivered by

MR. JUSTICE MCGOWAN.   It seems that many years ago Peterson Borum died intestate, seized of a tract of land containing 650 acres, leaving a widow, Sarah (who afterwards intermarried with one J. W. Ramage), and some other heirs, as to whom there is no very clear statement, but among them were W. S. Boyd, Hezekiah Boyd, Thomas Boyd, and Virgil Borum.   We gather from the Brief (the case was not argued, but submitted) that the widow, Sarah (entitled to one-third of the land), afterwards intermarried with one J. W. Ramage, and in 1870 died intestate, leaving as her heirs and distributees her said husband, J. W. Ramage, and six children, viz., Laura Ramage, C. P. Ramage, Millie Ramage, Mary Ramage, John C. Ramage, and N. E. Edwards (the last, we suppose, by representation).   These proceedings were instituted by the surviving husband, J. W. Ramage, and some of the children, for partition of the aforesaid tract of land, involving not only the interest of the parties in the one-third inherited by the widow, Sarah, but also as to the interest of the other heirs of Borum to the remaining two-thirds.

There was no difficulty, except as to the ownership of the two-thirds, which descended to the heirs of Borum. None of them appeared to claim in their own right; but it seemed to be conceded that they had sold their interest to some of the Ramage children, and the main question in the case was to whom that interest had been sold and conveyed. Mary Ramage and her sister, C. P. Ramage, offered in evidence a deed of the land to them, bearing date January 16, 1882, from W. J. Boyd, Hezekiah Boyd, and Virgil M. Borum, executed by W. J. Boyd for himself and as attorney in fact for the other parties, regularly recorded February 22, 1883. John C. Ramage answered that the two-thirds interest had been previously conveyed by W. J. Boyd as attorney in fact to Mary Ramage and himself in consideration of one thousand dollars (but really $900), which was paid by himself alone, with the understanding that his sister Mary was to purchase the interest of other heirs, &c. But that the said Mary Ramage and her sister, C. P. Ramage, fraudulently and collusively obtained from the said W. J. Boyd, attorney in fact, &c., a second deed to themselves as grantees, dating the same back to the time when the first deed was executed ; and he prayed that the second deed to Mary Ramage and C. P. Ramage should be set aside as fraudulent and void.

The cause was first heard by Judge Witherspoon, who, considering that the case was not ready for a final decree, referred the cause to the master "to take further testimony as to the interests of W. S. Boyd, Hezekiah Boyd, and V. M. Borum in the two-thirds of the land, as well as to the authority of W. S. Boyd to convey said two-thirds interest under power of attorney ; and as to the contents of the deed (first) claimed to have been executed by W. S. Boyd at Leesville, S. C., to Mary Ramage and John C. Ramage, and delivered to said Mary Ramage by A. P. West in January or February, 1882, &c. That said master do notify Mary Ramage, C. P. Ramage, and John C. Ramage of the reference to be held under this order, and take additional testimony on behalf of either of the parties, and report the same," &c.

Under this order the master took the testimony of Mary Ramage and that of W. J. Boyd by commission. Mary Ramage tes-

tified "that Mr. Boyd delivered to her a paper purporting to be a
deed, but that it was *not accepted*. It was to be returned if
not satisfactory—contents not looked into until his departure.
As soon as it was examined sent Mr. Boyd word it was not satis-
factory, and would not be accepted as a deed.  He was to return
in a short time, but did not.  About a year after witness went to
Georgia, and this deed (in proof) was executed to witness and
her sister (C. P. Ramage).  The first deed was to witness and
John C. Ramage.  Returned the first deed to Mr. Boyd—ob-
jected to the deed because it was not properly executed, and it
was to J. C. Ramage.  He was not to have any interest in it,
and had improperly had his name inserted.  Did not see the deed
was to her and John C. Ramage before Mr. West probated it.
Paid Mr. Boyd every dollar of the money with her own hands.
Not a dollar of it was paid by J. C. Ramage.  Paid him (Boyd)
before he went to Leesville when he was to make the deed. * * *
Would not return the first deed till he repaid the money or made
a proper deed.  There was no understanding that J. C. Ramage
was to be a party named in the first deed.  Never agreed that he
was to be party, only on condition that C. P. Ramage would con-
sent for him to take her place.  She objected, and witness did
not consent.  *  *  *  Not a dollar was the money of J. C.
Ramage.  Every dollar was witness' own money," &c.

W. J. Boyd testified: "That he contracted with Miss Mary
Ramage, and had no transaction or conversation with John C.
Ramage, who did not pay him a cent.  John C. Ramage first
told me that Miss Mary Ramage desired the deed made to him.
In accordance with this information I made the deed to him.
Afterwards when I presented the deed to Miss Mary Ramage
she refused to accept it and I had to make another deed to her.
All the negotiations for the sale of the land and purchase thereof
were between Miss Mary Ramage and myself.  He was author-
ized to make the deed, being a part owner of the land, and hav-
ing a power of attorney from the other joint owners.  Some
time after the execution of the first deed, which had been made
to the wrong party, the second deed was dated back to the time
of the execution of the first."

The cause again coming on for trial with this additional testi-

mony, Judge Fraser held "that parties coming for partition were not required to show their title to the land. If there is any defect of title, they will not be required to expose it, or to defend their title until assailed by others. They must, however; show so much of their title as is necessary to inform the court of the proportions to which they are respectively entitled. Both parties here claim under the heirs of Peterson Borum, and under Boyd acting for himself and the other heirs, and as between them I think Mary Ramage and C. P. Ramage are entitled, to the exclusion of John C. Ramage, to the two-thirds interest which belonged to the Borum heirs," &c.

From this decree John C. Ramage appeals to this court. The exceptions are long and numerous, and are in the Brief. The points made, however, in the argument of counsel are reduced to four, as follows :

First. "That Judge Fraser's decree is in conflict and overrides that of Judge Witherspoon upon the only question before him, to wit, the sufficiency of the proof of title by the plaintiff in the case, which had been referred back to the master for further proof upon that question alone, which was never produced. In this Judge Fraser committed error in deciding it not necessary," &c. As we understand it, Judge Witherspoon did not undertake to make any decree at all upon the merits, but gave his reasons for declining to do so—that the evidence was too meagre and unsatisfactory, referring the whole case back, only indicating certain points as to which especially further proof was necessary. As to the parties before the court, the additional proof offered was important and conclusive of the case.

Second. "That W. J. Boyd having signed the first deed as attorney for the parties, instead of signing the names of the grantors, through W. J. Boyd, attorney, that therefore the first deed was void. The execution of the power of attorney, we admit, was defective as decided in the cases of *Webster* v. *Brown & Hammett*, 2 *S. C.*, 428, and *De Walt* v. *Kinard*, yet in equity it is a good execution of the power, and will vest the equitable title in the grantees *Welsh* v. *Usher*, 2 *Hill Ch.*, 167." Judge Fraser did not rest his decree upon the defective execution of the first paper, claimed to be a deed, but upon the ground that the pur-

chase money was paid by Mary Ramage, "and if the conveyance was made in whole or in part to John C. Ramage, it was done in derogation of her right, and that whatever title John C. Ramage took he holds for her benefit, and that she has either a constructive or a resulting trust in her favor," &c.

Third. "The grantees under the second deed had knowledge of the first deed, and by destroying the first deed and procuring a second deed after the lapse of a year, and after J. C. Ramage had gone into possession of the land under the first deed, they perpetrated a gross fraud on the rights of John C. Ramage, which, in equity and good conscience, should not be sustained, &c. See *Sheorn* v. *Robinson*, 22 *S. C.*, 32." Even if the first paper purporting to be a deed had been regularly executed by Boyd, the attorney in fact, and had been accepted by the grantee, which is stoutly denied, we cannot well see what rights John C. Ramage could acquire in premises paid for exclusively by his sister Mary, simply by having his own name inserted in the deed as one of the grantees, and taking possession of the land. If he had his name inserted improperly and without authority, the deed as to him was simply void. If he had authority to do so, he holds for his sister, who paid the purchase money.

Fourth. "The individual interest of W. J. Boyd was conveyed under the first deed, and the mere returning of it to Boyd, and the taking of the second by Mary Ramage, did not revest the title to that interest in Boyd, so as to be conveyed by the second deed. The first deed was good and valid, so far as the interest of Boyd was concerned." As it seems to us, the conclusive answer to this is, that no interest, legal or equitable, could vest under a deed procured by misrepresentation and executed to the wrong person. But if properly and fairly obtained, it raised a resulting trust in favor of his sister Mary, who paid the purchase money.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.